**GRANDVIEW HEIGHTS (City), Plaintiff, v. REDICK, Director of Public Service et, Defendants.**

Common Pleas Court, Franklin County.

No. 191,423. Decided August 26, 1955.

**OPINION**

By HARTER, J.

Since 1911, the City of Columbus, Ohio, has been supplying water to the inhabitants of the City of Grandview Heights, Ohio, through a series of agreements. By the agreement, dated August 1, 1934, covering this supplying of water, the charge for such water was set at a rate of 10% above the schedule of rates for consumers within the City of Columbus. The consumers in the City of Grandview Heights were required by that agreement, and did, sign standard consumers' contracts issued by the City of Columbus, and the same rules and regulations and service, afforded by the City of Columbus to its own residents, were afforded to the City of Grandview Heights consumers.

That method of operation, although purporting to be for a ten year term, in fact prevailed for twenty years. As of September 1, 1954, the City of Columbus undertook, by duly enacted Ordinance, to begin charging consumers of water within the City of Grandview Heights on a schedule of rates more than 10% above the schedule applied to City of Columbus consumers.

This action by the City of Columbus is here challenged as to its legality and the City of Grandview Heights is here seeking injunctive relief to prohibit the defendants "from charging or collecting any rate for water to the consumer inhabitants of the City of Grandview Heights in excess of 10% of the charge or rate made against the consumers within the municipal corporation of the City of Columbus * * *."

The Amended Petition alleges facts which tend to bring the problem within the provisions of §743.13 R. C. This Court will not attempt to recite those facts here; rather we will quote the statute:

When any person at his own expense has laid down and extended mains and water pipes or electric light and power lines beyond the limits of a municipal corporation, and the legislative authority thereof, by resolution, has authorized the proper officer of the water works to superintend or supervise such laying and extension, the municipal corporation shall furnish water or electricity to the residents and property holders on the line of such facilities. The same rules and regulations which govern the furnishings of water or electricity to its own citizens shall apply in such cases, except that the rates charged therefor shall not exceed those within the municipal corporation by more than one tenth.

In the opinion of this court, this statute (§743.13 R. C.) should be read in connection with §§743.12, 743.14, 743.15, 743.16 and 743.17 R. C. It then becomes readily apparent that all six of the statutes, in series, deal with the rights and obligations of private persons (as contrasted with municipal corporations) and that an entirely separate group of succeeding statutes (i. e. §§743.17 to 743.21, inclusive, R. C.) cover the rights and obligations of Municipal Corporations where water is being supplied.

It is most significant that in the latter sections of the Revised Code of Ohio, there is no 10% limitation upon the amount which a supplying municipality may charge for water. We quote the applicable statute §743.18 R. C.:

A municipal corporation which has water works or electric works may contract with any other municipal corporation to supply it or its inhabitants with water or electricity upon such terms as are agreed upon by their respective legislative authorities. A municipal corporation which has a water works may dispose of surplus water, for manufacturing or other purposes, by lease or otherwise, upon such terms as are agreed upon by the director of public service of a city or the board of trustees of public affairs of a village and approved by the legislative authority thereof. Moneys received for such surplus water in either case shall be applied to the payment of the principal and interest of the bonds issued for the construction of such water works, or for other expenses incident to the maintenance thereof, but no lease shall be made for a longer term than twenty years.

The amount to be paid for such water supply shall be raised by the municipal corporation purchasing it, in the manner provided for the payment of the expense of conducting and managing water works constructed wholly by a municipal corporation. The amount so received by the municipal corporation furnishing such supply shall be applied to the payment of the interest on the sum borrowed for the construction of such water works, or to defray the expense of its management, as the director of public service or board of trustees directs.

In our opinion, the facts alleged in plaintiffs' amended petition (confessed, as they are, by defendants' general demurrer) conclusively exclude the application of the 10% limitation provided for in §743.13 R. C. (upon which plaintiffs rely) and conclusively bring this fact pattern within the provisions of §§743.17 to 743.21, inclusive, R. C., where no limitation, of 10% or otherwise, is specified. This means, in effect, that we adopt the defendants' theory and reject the plaintiff's contention.

This holding disposes of this entire controversy and we could end this opinion at this point. However, such a holding might not finally terminate this controversy. Further amendments of the plaintiffs' pleadings might be attempted and the litigation prolonged in this court. In the hope that we may avoid such protracted litigation in this court, and in the further hope that we can by our present action adequately lay the ground work for appellate proceedings, in this case, we will comment upon the same question of constitutional law which received attention from Judge Rogert E. Leach of this court, in a decision he rendered under date of March 11, 1955, in sustaining a demurrer to plaintiff's original petition.

Judge Leach in that decision, expressed doubt that the Ohio General Assembly had the power (under the Amendments to the Ohio Constitution, adopted in 1912, in culmination of the "Home Rule" movement) to limit the price which a city might charge for selling its water to persons beyond the limits of the municipal corporation. That problem was not directly raised at the time Judge Leach considered this case but it has now been directly raised and has been fully briefed by the attorneys

for both sides in this litigation on the demurrer now before this court.

Since this question is directly raised now, we hold that the facts alleged in plaintiff's amended petition bring this case squarely within **Article XVIII, Section (4), Ohio Constitution,** which provide,

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise and a municipality may acquire, thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility (adopted September 3, 1912)."

**Section 6, Article XVIII, Ohio Constitution,** is not here directly applicable as we see the situation in that no question as to the amount or percentage of surplus water supplied to the inhabitants of the City of Grandview Heights is raised here.

By way of historical background, it should be observed that the power of a municipality in Ohio to construct, acquire or contract with a public utility was limited to that power which was expressly granted by the General Assembly, **prior to the adoption** of the Home Rule Amendment in 1912.

Since the adoption of the Home Rule Amendments to the Constitution in 1912, the municipality's power regarding public utilities is no longer derived from nor has it been subject to substantial limitation by the legislature. See **Link v. Public Utilities Commission of Ohio (1921), 102 Oh St 336; State, ex rel. City of Toledo v. Weiler (1920), 101 Oh St 123; City of Cleveland v. Village of Cuyahoga Heights (1947), 81 Oh Ap 191; Ricketts v. City of Mansfield (1932), 43 Oh Ap 316; and Alcorn v. The Cincinnati Traction Company (1925), 25 Ohio Nisi Prius (New Series) 523.**

It is the settled law of the state, since 1912, that the power granted to a municipality by **Section 4, Article XVIII, Ohio Constitution,** stems from the people of Ohio. See **Village of Perrysburg v. Ridgeway (1923), 108 Oh St 245.** This Section 4, Article XVIII, Ohio Constitution, confers complete power upon municipalities to own and operate public utilities and to contract with such utilities for products and service and to fix the rate therefor. All legislative enactments restricting, limiting, or conflicting with this power are invalid. See **Rickets v. City of Mansfield (1932), 43 Oh Ap 316 at 327.** The section of the constitution is self-executing, requiring no implementation by the legislature. See **State, ex rel, Doerfler v. Otis (1918), 98 Oh St 83; Pfau v. Cincinnati (1943), 142 Oh St 101.**

Under the compulsion of these authorities, we hold that, insofar as the provisions of §743.13 R. C., purport to limit the amount which a municipality (the City of Columbus) may charge for water furnished the inhabitants of an adjoining municipality (the City of Grandview Heights) to rates which shall not exceed the rates to those within the municipal corporation (Columbus), by more than one tenth is **unconstitutional and**

**unenforceable** even though that statute, or its predecessors, has been in existence as statutory law in Ohio for some 62 years.

We recognize that counsel for the plaintiff most strenuously objects to this theory; he has fully set forth his theories to the contrary in his brief in opposition to the demurrer now being considered. We will not attempt a detailed consideration of his arguments; rather, we say that his arguments are ones which should be directed toward an amendment of the Ohio constitution; they do not, in our opinion, apply to the problem with which this court is now confronted—i. e. a problem of applying the Home Rule provisions of the Ohio Constitution in the light of the construction which has been placed upon those Home Rule Amendments by the reviewing courts of this state.